Nicole N. King (SBN 290204)
Anna D. Higgins (SBN 366177)
**VENABLE LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901
Email: nnking@venable.com
adhiggins@venable.com

Attorneys for Defendant
Experian Information Solutions, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALEXANDREA BRETZ

Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS INC., AND EXPERIAN INFORMATION SOLUTIONS, INC.

Defendants.

Case No. 2:25-cv-01865-SPG-ASx

Hon. Sherilyn Peace Garnett

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND AUTHORITIES; AND PLAINTIFF ALEXANDREA BRETZ'S OPPOSITION**

Hearing
Date: December 16, 2026
Time: 1:30 p.m.
Courtroom: 5C

Action Filed: March 4, 2025
Trial: March 9, 2027

**TO THIS COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5C of the above-entitled Court, located at 350 W 1st Street, Los Angeles, California 90012, Defendant Experian Information Solutions, Inc. ("Experian") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in Experian's favor and against Plaintiff Alexandrea Bretz ("Plaintiff") on each and every claim asserted against Experian in the First Amended Complaint ("FAC"), filed on September 3, 2025 (ECF No. 29).

This motion is made on the grounds that the undisputed facts show that:

1. Plaintiff's claims under 15 U.S.C. § 1681e(b) and California Civil Code § 1785.14(b) fail at the threshold because Plaintiff cannot establish that Experian prepared a consumer report containing inaccurate information about her;
2. Plaintiff's claims under 15 U.S.C. § 1681g and California Civil Code §§ 1785.10 and 1785.15 fail because Plaintiff did not make the requests necessary to trigger Experian's disclosure responsibilities; and
3. Plaintiff cannot establish that Experian's alleged noncompliance was willful under 15 U.S.C. § 1681n and therefore cannot recover statutory or punitive damages.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities including any opposition by Plaintiff; the Joint Appendix of Facts filed concurrently herewith; the Joint Appendix of Evidence filed concurrently herewith; the Declaration of Nicole N. King and the exhibits thereto; the Declaration of Teresa Fievez and the exhibits

thereto; the [Proposed] Order lodged herewith; all pleadings, records, and papers on file in this action; and such further evidence and argument as may be presented at or before the hearing.

**Local Rule 7-3 Certification.** This Motion is made following the conference of counsel pursuant to Local Rule 7-3 and the Court's Standing Order for Motions for Summary Judgment ¶ 1, which took place on October 20, 2026—14 days before Experian sent its portion of this Motion to Plaintiff. Counsel for Experian and Plaintiff met and conferred via videoconference to discuss the substance of this Motion. *See* Declaration of Nicole N. King ¶ 2.

Respectfully submitted,

**VENABLE LLP**

Dated: November 18, 2026

By: /s/ *Anna D. Higgins*
Anna D. Higgins
Nicole N. King
*Attorneys for Defendant,*
*Experian Information Solutions, Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION ............... **ERROR! BOOKMARK NOT DEFINED.**

A. Experian's Introduction ................ **Error! Bookmark not defined.**

B. Plaintiff's Introduction ................. **Error! Bookmark not defined.**

II. STATEMENT OF FACTS .. **ERROR! BOOKMARK NOT DEFINED.**

A. Experian's Statement of Facts ...... **Error! Bookmark not defined.**

1. Charter's Soft Inquiries Regarding Plaintiff's Social Security Number ..... **Error! Bookmark not defined.**

2. Alleged Third Party Credit Report.... **Error! Bookmark not defined.**

B. Plaintiff's Statement of Facts ....... **Error! Bookmark not defined.**

III. LEGAL STANDARD ......... **ERROR! BOOKMARK NOT DEFINED.**

IV. ANALYSIS.......................... **ERROR! BOOKMARK NOT DEFINED.**

A. Experian's Argument 1 ................ **Error! Bookmark not defined.**

1. Experian is Entitled to Summary Judgment on Claims I and II Because Plaintiff Cannot Establish Inaccurate Reporting. ........ **Error! Bookmark not defined.**

2. Plaintiff's Response ........... **Error! Bookmark not defined.**

B. Experian's Argument 2 ................ **Error! Bookmark not defined.**

1. Experian Is Entitled to Summary Judgment on Claims III and IV Because Plaintiff Cannot Establish That Experian Received Her Alleged Disclosure Request............. **Error! Bookmark not defined.**

2. Plaintiff's Response ........... **Error! Bookmark not defined.**

C. Experian's Argument 3 ................ **Error! Bookmark not defined.**

1. Experian is Entitled to Summary Judgment on Plaintiff's Claim of Willful Noncompliance Under the FCRA. ............... **Error! Bookmark not defined.**

2. Plaintiff's Response ........... **Error! Bookmark not defined.**

V. CONCLUSION.................... **ERROR! BOOKMARK NOT DEFINED.**

A. Experian's Conclusion ................. **Error! Bookmark not defined.**
B. Plaintiff's Conclusion................... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Experian Info. Sols., Inc.*,
812 F. App'x 426 (9th Cir. 2020) ........ 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 8

*Banneck v. HSBC Bank USA, N.A.*,
No. 15-cv-02250-HSG, 2016 WL 3383960
(N.D. Cal. June 20, 2016) ........ 29, 30

*Bias v. Moynihan*,
508 F.3d 1212 (9th Cir. 2007) ........ 9

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ........ 9, 10, 19, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 8

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010) ........ 20

*Darrin v. Bank of Am., N.A.*,
No. 2:12-cv-00228-MCE-KJN, 2014 WL 1922819
(E.D. Cal. May 14, 2014) ........ 15

*Douglass v. USAA Sav. Bank, Inc., No. CV 16-2601-R*,
2016 WL 9173463 (C.D. Cal. Sept. 16, 2016) ........ 25, 27, 28

*Drew v. Equifax Info. Servs., LLC*,
2009 WL 595459 (N.D. Cal. Mar. 5, 2009) ........ 25

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008) ........ 23

*Florence v. Experian Info. Sols., Inc.*,
775 F. App'x 308 (9th Cir. 2019) ........ 13

*Golden v. TransUnion, LLC*,
No. 2:25-cv-11740-AH-SKx, 2026 WL 1811652 (C.D. Cal. June 18, 2026) .......... 12

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .......... 10, 13

*Grigoryan v. Experian Info. Sols., Inc.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014) .......... 15

*Guimond v. Trans Union Credit Info. Co.*,
45 F.3d 1329 (9th Cir. 1995) .......... 3, 9, 15, 17, 22

*Jacobsen v. Filler*,
790 F.2d 1362 (9th Cir. 1986) .......... 9

*Leslie v. Experian Info. Sols., Inc.*,
No. 21-00334 JMS-RT, 2023 WL 5000770 (D. Haw. Aug. 4, 2023) .......... 29

*Lott v. BSI Fin. Serv., Inc.*,
No. 5:23-cv-00269-SSS-SHKx, 2025 WL 211971 (C.D. Cal. Jan. 6, 2025) .......... 12

*Lovelady v. Experian Info. Sols., Inc.*,
No. 25-2720, 2026 WL 637398 (9th Cir. Mar. 6, 2026) .......... 12, 13, 22

*Marino v. Ocwen Loan Servicing LLC*,
978 F.3d 669 (9th Cir. 2020) .......... 29, 30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 9

*Moran v. Screening Pros, LLC*,
25 F.4th 722 (9th Cir. 2022) .......... 29

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000) .......... 18

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) .......... 18

*Perkins v. Navy Fed. Credit Union*,

No. 2:25-cv-02146-GMN-DJA, 2026 WL 2874385 (D. Nev. Sept. 23, 2026) .......... 30, 32

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) .......... 28, 29, 30, 31, 32

*Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018) .......... *passim*

*Stevens v. Genesis Credit Mgmt., LLC,* No. 6:15–cv–01898–JR, 2017 WL 2695335 (D. Or. May 2, 2017) .......... 15

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) .......... 29

*Thompson v. Experian Info. Sols., Inc.*, No. 24-cv-08896-VC, 2026 WL 682206 (N.D. Cal. Feb. 23, 2026) .......... 12

*Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917 (9th -15-Cir. 2019) .......... 15, 16

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......... 17

**Statutes**

15 U.S.C. § 1681 .......... 1

15 U.S.C. § 1681e .......... 9, 15

15 U.S.C. § 1681g .......... 2, 24

15 U.S.C. § 1681j .......... 27

15 U.S.C. § 1681n .......... 2, 4, 28, 30, 31

15 U.S.C. § 1681o .......... 33

Civ. Code, § 1785.1 .......... *passim*

Civ. Code, § 1785.10 .......... 2, 24, 28

Civ. Code, § 1785.14 .......... 9, 15

Civ. Code, § 1785.15 .......... 2, 24, 28

Civ. Code, § 1785.31 ....................................................................................31

**Regulations**

12 C.F.R. § 1022.136....................................................................................27

**Rules**

Fed. R. Civ. P. 26(e)(1)(A)..............................................................................17
Fed. R. Civ. P. 37(c)(1) ..................................................................................17
Fed. R. Civ. P. 56(a) ......................................................................................8
Fed. R. Civ. P. 56(c)(2) ..................................................................................18
Fed. R. Evid. 602 .....................................................................................18, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. Experian's Introduction

Plaintiff Alexandrea Bretz erroneously asks the Court to hold Experian liable for a report that Experian never made. Her case rests on two false premises: that Experian reported her as deceased, and that Experian failed to provide her with a credit report upon request. The undisputed record refutes both. On June 3, 2025, Charter Communications, Inc. d/b/a Spectrum ("Charter") submitted two credit inquiries to Experian in connection with Plaintiff. The first inquiry contained a Social Security number ("SSN"), supplied by Charter, that differed from Plaintiff's actual SSN by one digit; the second used Plaintiff's correct SSN. (Joint Appendix of Facts ("JAF") at ¶¶ 11–14.) In the first inquiry, Charter submitted the incorrect SSN. *Id.* When Charter submitted Plaintiff's correct SSN on the second inquiry, Charter received Plaintiff's file without any indication that she was deceased or a Fraud Shield Code. *Id.* More importantly, Charter's own subpoenaed business records state, in plain terms, that neither June 3 inquiry returned deceased-SSN information from Experian: "Deceased SSN info from Experian = NO." (JAF at ¶¶ 21–23.) Also, Plaintiff herself admits that she has never seen any Experian report identifying her as deceased. (JAF at ¶ 17.) The evidence does not show that Experian reported Plaintiff as deceased. It shows that Charter submitted incorrect identifying information and that Plaintiff has attributed the resulting problem to Experian without any evidence that Experian made the alleged misreporting.

Plaintiff nevertheless asserts four claims for relief against Experian under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1 *et seq.* ("CCRAA"). Claims I and II allege that Experian failed to follow reasonable

procedures to assure maximum possible accuracy based on Plaintiff's contention that Experian reported her as deceased. Claim III alleges that Experian violated 15 U.S.C. § 1681g by failing to provide a file disclosure after Plaintiff attempted to obtain one through annualcreditreport.com on or about June 24, 2025, and Claim IV asserts corresponding claims under Cal. Civ. Code §§ 1785.10 and 1785.15.

Each claim fails, for three independent reasons that track the grounds stated in Experian's Motion. First, Claims I and II fail at the threshold because Plaintiff cannot show that Experian prepared any report containing inaccurate information about her; and even if she could, she has no evidence that Experian's reporting was materially misleading or that any inaccuracy resulted from an unreasonable Experian procedure. Second, Claims III and IV fail because Experian has no record of receiving the alleged June 24, 2025, disclosure request, and Plaintiff has no evidence that it did. Third, even if Plaintiff could establish an underlying violation, nothing in the record would permit a reasonable jury to find that Experian knowingly or recklessly violated the FCRA, which forecloses statutory and punitive damages under 15 U.S.C. § 1681n. The FCRA does not make Experian liable for a subscriber's input error, and summary judgment should be granted in Experian's favor.

**B. Plaintiff's Introduction**

Experian asks for judgment on a record built from a third party's litigation letter, a letter Experian promised in May 2026 and did not produce until five months later. Even taken at face value, that record shows Experian sent Charter a fraud alert on the first June 3, 2025 application, the application that failed. Experian's own declarant also concedes the key fact on the disclosure claim. The "condition exists" message Plaintiff received is Experian's message that it would not accept her request, and requests Experian does not accept are, by design, never logged. (JAF ¶¶

35, 42–43.) Experian's "no record" argument therefore proves nothing.

Three genuine disputes require denial, or at least deferral under Rule 56(d).

*Accuracy*. Charter's records, on which Experian relies, show that Experian's response to the first inquiry carried Fraud Shield codes 13 and 27. Experian's declarants never mention or define those codes. That order was not submitted; a second inquiry 41 minutes later, with no Fraud Shield code, went through. (JAF ¶¶ 25, 34–36.) Experian admits it keeps no copy of what it sends to subscribers, the inquiry SSN is redacted from its own exhibit, and its records show it had previously carried an SSN one digit off from Plaintiff's on a record tied to her, which it corrected only in 2023. (JAF ¶¶ 39, 47; King Decl. Ex. B at CHRTR000002.) Whether Experian's output was accurate is genuinely disputed, and whether its matching procedures were reasonable is a question for the jury. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

*Disclosure. On June 24, 2025, Plaintiff obtained her TransUnion and Equifax reports through annualcreditreport.com, minutes apart, while Experian displayed its refusal page. (JAF ¶¶ 44–46.) Experian claims no record exists, yet its File One and consumer reports both record June 24, 2025 activity (N=0000030484). (JAF ¶ 75.) Experian has never identified the blocking "condition." (JAF ¶ 41.) And while Experian's declarant says Experian "provided" a September 30, 2025 disclosure, its own log records that report as an internal "Admin" / "Exception" entry showing "No CDIs" and "No LETTERS." (JAF ¶¶ 32, 55–56.)*

*Willfulness. Experian had notice of identity problems from its 2023 SSN correction, its fragmented File One name records and 37-SSN-report flags, and Plaintiff's 2023 letter and May 7 and June 11, 2025 telephone disputes. (JAF ¶¶ 47, 49, 61, 68, 75.) After routing her file to its litigation team in 2024, Experian logged thirteen contacts as disputes without opening a dispute cycle, routing all six 2025*

*calls (3499953 CNX) to a zero-tradeline 2023 record (N=0000020333) with "No CDIs" and "No LETTERS." (JAF ¶¶ 63, 66, 74.) In any event, Argument 3 reaches only statutory and punitive damages under 15 U.S.C. § 1681n, not negligence under § 1681o or California Consumer Credit Reporting Agencies Act ("CCRAA") claims.*

## II. STATEMENT OF FACTS

### A. Experian's Statement of Facts

Plaintiff's claims against Experian arise from two alleged incidents: (1) Plaintiff's contention that she was denied a Spectrum phone buyout program in May 2025 (later determined to be June 3, 2025) on the basis of a deceased indicator associated with her application; and (2) her unsuccessful attempt to obtain an Experian consumer disclosure through www.annualcreditreport.com on or about June 24, 2025. (First Am. Compl. ("FAC" at ECF No. 29) at ¶¶ 122-140, 148-183; JAF at ¶ 11.)

#### 1. Charter's Soft Inquiries Regarding Plaintiff's Social Security Number

As part of its fraud-prevention procedures, Experian compares identifying information submitted with a credit inquiry, including the Social Security number ("SSN"), against information maintained in its systems. (JAF at ¶ 6.) Experian compares the submitted SSN against Death Master File information and uses Fraud Shield indicators to alert subscribers when a submitted SSN is associated with a deceased individual. (JAF at ¶¶ 6–10.)

On June 3, 2025, Experian received two inquiries from Charter associated with Plaintiff. (JAF at ¶¶ 11, 20–23.) The first June 3 inquiry contained an SSN that differed from Plaintiff's actual SSN by one digit, and Charter received a Fraud Shield indicator code. (JAF at ¶ 12.) Charter supplied the SSN to Experian as part

of the inquiry; Experian did not generate, alter, or introduce it. (JAF at ¶ 13.) The second inquiry, submitted the same day, contained Plaintiff's correct SSN and Charter received Plaintiff's Experian file, which did not identify her as deceased. (JAF at ¶ 14.)

Likewise, Charter's subpoenaed business records do not reflect that Experian reported Plaintiff as deceased. (JAF at ¶¶ 18–25.) Charter's Daily Inquiry Report includes a "Fraud Shield Cd" field for the two June 3, 2025, sessions, and neither session reflects Fraud Shield code 5 or 25 returned by Experian, which would have indicated that Charter received a deceased-SSN response. (JAF at ¶¶ 20–21.) Charter's separate Session Reporting Data states for both inquiries: "Deceased SSN info from Experian = NO." (JAF at ¶ 22.) The same record reflects a valid Experian score range of 590-663 for both sessions, and the second session states, "Order submitted with PBB benefits." (JAF at ¶¶ 24–25.)

Similarly, Plaintiff testified that she has never seen a report or indication from Experian that she was deceased. (JAF at ¶ 17.) Experian's September 30, 2025, consumer disclosure likewise contains no deceased indicator. (JAF at ¶ 32.)

2. <u>Alleged Third Party Credit Report</u>

Plaintiff separately alleges that, on or about June 24, 2025, she attempted to obtain her Experian consumer disclosure through a third party, annualcreditreport.com. (FAC ¶¶ 139–40, 168–70, 178–80; JAF ¶ 29.) According to the First Amended Complaint, Plaintiff received the message: "A condition exists that prevents Experian from being able to accept [Plaintiff's] request at this time." (FAC at ¶ 140.) Experian has no record of receiving a consumer disclosure request from Plaintiff on or about June 24, 2025. (JAF ¶ 30.) On September 30, 2025, Experian provided Plaintiff with a consumer disclosure, which did not identify her as deceased. (JAF ¶ 32.)

**B. Plaintiff's Statement of Facts**

**The June 3, 2025 Charter inquiries.** Charter submitted two inquiries to Experian on June 3, 2025: Session 1 at 8:11:28 p.m. CST and Session 2 at 8:52:47 p.m. CST. (JAF ¶ 34.) Both returned the same risk score and the same four score-factor codes. (JAF ¶ 36.) Experian's response to Session 1 included Fraud Shield codes 13 and 27, which Charter's key describes as coming "from Experian." (JAF ¶ 35.) Session 1 ended with "Order Not submitted." Session 2, whose Fraud Shield value was "null," was submitted. (JAF ¶ 25.) Experian's published Fraud Shield materials describe code 13 as "High probability Social Security number belongs to another" and code 27 as "Social Security number reported more frequently for another." (JAF ¶ 37.) Experian describes Fraud Shield as identifying "[a]ny inconsistencies between the credit application and the consumer's credit report." (JAF ¶ 38.)

A Spectrum representative told Plaintiff she was denied because she was "dead" and that the information came from Experian. (JAF ¶ 15; King Decl. Ex. C at 141:19–142:3.) Plaintiff testified that she gave Spectrum her correct SSN. (JAF ¶ 50.)

**What Experian does and does not have.** Experian "does not maintain, in the ordinary course of business, copies of the consumer reports it has provided to third parties." (JAF ¶ 39.) Asked what data it returned to Spectrum and whether a deceased indicator was included, Experian answered only by pointing to documents under Rule 33(d). (JAF ¶ 40.) The Charter inquiry SSN and the SSN Experian returned are redacted from Experian's exhibit. (King Decl. Ex. B at CHRTR000002–03.) Charter's counsel states that the logs of Experian's responses were purged and that the daily inquiry report is one "which Experian hosts on its side." (JAF ¶¶ 51–52.) Experian's records also show a Charter inquiry on October 24, 2024, which

Charter's production does not address. (JAF ¶ 53.)

**Experian's file history.** In September 2023, Experian replaced an SSN that differed from Plaintiff's by one digit on a name record associated with her file. (JAF ¶ 47.) Plaintiff disputed with Experian by telephone on May 7, 2025 and June 11, 2025, the weeks before and after the Charter inquiries. (JAF ¶ 49.)

**Plaintiff's written notices and Experian's handling. On September 15, 2023, Plaintiff wrote to Experian that her "main concern" was that it was "incorrectly reporting me as deceased." (JAF ¶ 61.) Experian's Dispute/Response Log shows four internal name and date-of-birth updates and one paragraph, "Name or SSN explanation." (JAF ¶ 62.) On March 11, 2024, Experian routed Plaintiff's file to its "ECA LITIGATION TEAM." (JAF ¶ 63.) On August 19, 2024, Plaintiff asked in writing for "the credit report issued to Capital One . . . on or around July 3, 2024." (JAF ¶¶ 64–65.) Between August 27, 2024 and June 11, 2025, Experian logged thirteen contacts as disputes with no D/R Log dispute cycle, routing all six 2025 calls (3499953 CNX) to zero-tradeline record N=0000020333 with "No LETTERS" and blank agentName. (JAF ¶¶ 66, 74, 76.) Experian's manual refers to recordings in "Calabrio." (JAF ¶ 67.)**

**The June 24, 2025 request. On June 24, 2025, Plaintiff used annualcreditreport.com to obtain her TransUnion report at 21:49 UTC and her Equifax report at 21:52 UTC. (JAF ¶¶ 44–45.) In the same session, her Experian request returned: "A condition exists that prevents Experian from being able to accept your request at this time," without stating that Plaintiff could not be identified. (JAF ¶ 46.) Experian's declarant states that this message "indicates that the request was not accepted, and a request that is not accepted is not recorded in the Disclosure Log" (JAF ¶¶ 42–43), which records**

**no annual report after July 26, 2024 (JAF ¶ 48)—yet File One and Plaintiff's consumer report both record June 24, 2025 activity (N=0000030484). (JAF ¶ 75.)**

**The September 30, 2025 report.** Experian's declarant states that Experian "provided" Plaintiff a consumer disclosure on September 30, 2025. (JAF ¶ 32.) Experian's Disclosure Log records that report as an internal "Admin" / "Exception" entry with "No CDIs" and "No LETTERS." (JAF ¶ 55.) Other entries in the same log that record disclosures to Plaintiff each list a CDI with a request date. (JAF ¶ 56.) Experian identifies no record that this report was mailed or otherwise delivered. Plaintiff did not receive it. (JAF ¶ 57.)

**The Charter production.** On May 12, 2026, Experian promised to provide Charter's subpoena response to Plaintiff. Charter produced on May 21, 2026. Experian first provided CHRTR000001–000009 to Plaintiff on October 12, 2026, and Charter's letter on October 29, 2026. (JAF ¶ 54.)

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may satisfy its burden by showing that the nonmoving party lacks evidence sufficient to establish an element on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes that showing, the nonmoving party must identify specific admissible evidence from which a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986). A factual dispute is "genuine" only when the evidence would permit a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is "material" only when it might affect the outcome of the suit. *Id.* The Court

views the evidence in the light most favorable to the nonmoving party, but the nonmoving party must present more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is appropriate in an FCRA case when the consumer cannot establish the essential elements of the consumer's statutory claims. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

A pro se litigant's filings are construed liberally, but a pro se plaintiff opposing summary judgment must still come forward with admissible evidence creating a genuine dispute of material fact. *Bias v. Moynihan*, 508 F.3d 1212, 1218–19 (9th Cir. 2007); *Jacobsen v. Filler*, 790 F.2d 1362, 1364–66 (9th Cir. 1986).

## IV. <u>ANALYSIS</u>

### A. Experian's Argument 1

#### 1. <u>Experian is Entitled to Summary Judgment on Claims I and II Because Plaintiff Cannot Establish Inaccurate Reporting.</u>

##### *a. Plaintiff Cannot Establish That Experian Reported Her as Deceased.*

Plaintiff's claims under 15 U.S.C. § 1681e(b) and California Civil Code § 1785.14(b) fail at the threshold because she cannot establish that Experian prepared a consumer report containing inaccurate information about her. To establish a claim under § 1681e(b), a consumer must first "make a prima facie showing of inaccurate reporting" by the consumer reporting agency. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("In order to make

out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information.”). The same accuracy requirement applies under the parallel CCRAA provisions. *Carvalho*, 629 F.3d at 890.

Information is inaccurate when it is “patently incorrect” or “misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.” *Shaw*, 891 F.3d at 756 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). If the consumer cannot make that threshold showing, the court does not reach the reasonableness of the CRA’s procedures. *Id.* at 756, 758–59.

Plaintiff cannot make that threshold showing. She has never seen an Experian report stating that she was deceased. (JAF at ¶ 17.) The Charter records identified in the current record state that neither of the two June 3, 2025, sessions returned deceased-SSN information from Experian. (JAF at ¶ 22.) Neither session contains Fraud Shield code 5 or 25, which would indicate a deceased-SSN response, and Charter’s Session Reporting Data states twice: “Deceased SSN info from Experian = NO.” (JAF at ¶¶ 20–23.)

Plaintiff’s own testimony confirms the absence of an inaccurate Experian report. When asked whether she had ever seen an Experian report indicating that she was deceased, she answered “No” and testified: “I have not seen an indicator specifically from Experian saying I was indicated as deceased.” (JAF at ¶ 17.) Although she testified that she had downloaded numerous Experian reports, she identified none containing a “deceased” notation. (JAF at ¶¶ 16–17.) Plaintiff’s September 30, 2025 Experian disclosure likewise contains no “deceased” indicator. (JAF ¶ 31.)

Plaintiff’s allegation that a Spectrum representative told her over the phone

that Experian had reported her as deceased does not establish the contents of any Experian communication. (FAC at ¶ 129; JAF at ¶ 15.) The records produced by Charter state that Experian supplied no deceased-SSN information in either identified session. (JAF at ¶¶ 20–23.)

Charter's submission of an incorrect SSN also does not establish inaccurate reporting by Experian. The undisputed evidence establishes that Experian did not create or alter the incorrect SSN; Charter supplied it. (JAF ¶ 13.) The records produced by Charter show that it did not receive deceased-SSN information from Experian, and the inquiry using Plaintiff's correct SSN returned Plaintiff's file without a deceased indicator. (JAF ¶¶ 14, 21–23.) The record therefore cannot support a finding that Experian associated Plaintiff's correct SSN or consumer file with a deceased individual.

*Shaw* further forecloses any attempt to convert a subscriber's interpretation of Experian's response into inaccurate reporting by Experian, and "imprecision alone does not render a CRA's conduct actionable." 891 F.3d at 756–57. In *Shaw*, the Ninth Circuit held that a subscriber's erroneous treatment of Experian's coding did not render Experian's reporting misleading because the resulting inaccuracy was attributable to the subscriber's treatment of the information, "not Experian's own inaccuracies." 891 F.3d at 758. The court therefore affirmed summary judgment because the plaintiffs "fail[ed] to point to any inaccuracies on their credit reports." *Id.* at 758–59.

The same result is warranted here. Like the plaintiffs in *Shaw*, Plaintiff is unable to point to any inaccuracies on her credit report. She has produced no Experian report stating that she was deceased, and Charter's own records affirmatively state that no deceased-SSN information was received from Experian. A contrary statement or conclusion by a Charter representative cannot, without

evidence of inaccurate information supplied by Experian, satisfy Plaintiff's threshold burden under § 1681e(b) or the CCRAA.

Further, courts in the Ninth Circuit have found that summary judgment is appropriate where plaintiffs failed to show that a report was inaccurate. *See Lovelady v. Experian Info. Sols., Inc.*, No. 25-2720, 2026 WL 637398, at *2 (9th Cir. Mar. 6, 2026) (affirming summary judgment in favor of Experian where the plaintiff did not "provide some evidence that the code *would* be misunderstood in the way she argues it might."); *see also Thompson v. Experian Info. Sols., Inc.*, No. 24-cv-08896-VC, 2026 WL 682206, at *1 (N.D. Cal. Feb. 23, 2026) (granting summary judgment in favor of Experian where the plaintiff did not present any evidence that his Experian reports were inaccurate); *Lott v. BSI Fin. Serv., Inc.*, No. 5:23-cv-00269-SSS-SHKx, 2025 WL 211971, at *5–6 (C.D. Cal. Jan. 6, 2025) (granting summary judgment on an FCRA claim in favor of a CRA because there was no disputed issue of material fact as to the accuracy of the CRA's reporting); *Golden v. TransUnion, LLC*, No. 2:25-cv-11740-AH-SKx, 2026 WL 1811652, at *3–4 (C.D. Cal. June 18, 2026) (granting summary judgment in favor of CRAs, including Experian, because there was no disputed issue of material fact as to the accuracy of the CRAs' reporting).

Because Plaintiff cannot identify any Experian report that was patently incorrect or misleading, Claims I and II fail as a matter of law.

*b. Alternatively, Experian's Reporting Was Not Materially Misleading as a Matter of Law.*

Even if Plaintiff cannot establish that Experian reported factually incorrect information, she may argue that Experian's reporting was nonetheless misleading. That theory also fails.

Under Ninth Circuit law, "imprecision alone does not render a CRA's conduct

actionable." *Shaw*, 891 F.3d at 757. Rather, the reporting must be "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions." *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)); *see Alexander v. Experian Info. Sols., Inc.*, 812 F. App'x 426, 428 (9th Cir. 2020) (affirming an order granting summary judgment because the plaintiff "has not provided evidence demonstrating that Experian's communications are unclear or inaccurate to a reasonable consumer; evidence that he alone misunderstands them is insufficient."); *see also Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308, 309 (9th Cir. 2019) ("A deviation from the guidelines did not render the reporting misleading" to where it affected credit decisions); *Lovelady*, 2026 WL 637398, at *2 (affirming summary judgment in favor of Experian because the plaintiff could not provide evidence on how the credit report may be misunderstood).

Plaintiff cannot make that showing here. Charter's subpoenaed business records show that neither of the June 3, 2025, inquiries returned Fraud Shield code 5 or 25, the codes associated with deceased-SSN information. (JAF at ¶¶ 9, 21.) Charter's Session Reporting Data is more explicit: for both inquiries, "Deceased SSN info from Experian = NO." (JAF at ¶ 22.) Because Charter did not receive a deceased-SSN response from Experian on either inquiry, Experian's reporting could not have been misleading to an extent that could be expected to adversely affect credit decisions. (JAF at ¶ 23.) Furthermore, when Charter submitted Plaintiff's correct SSN, Experian returned Plaintiff's file without any indication that she was deceased, which demonstrates that the reporting was not misleading at all. (JAF at ¶ 14.)

*Shaw* illustrates why any error by Charter would not make Experian's reporting misleading. There, Experian reported the plaintiffs' short sales using code

combination 9-68. 891 F.3d at 757–58. Although Fannie Mae treated code 9 as indicating a possible foreclosure, the Ninth Circuit held that Experian's reporting was not misleading because the additional code 68 identified the underlying event as a short sale. *Id.* The court acknowledged that Fannie Mae's treatment of the coding "could have adversely affected credit decisions," but held that, "this does not render Experian's reporting misleading." *Id.* at 758. Instead, the record showed that the adverse reporting resulted from "Fannie Mae's mistreatment of Experian's coding, not Experian's own inaccuracies." *Id.*

The record here is even more direct than in *Shaw*. Charter's data does not merely reflect information capable of being misinterpreted; it affirmatively states that Charter received no deceased-SSN information from Experian. (JAF at ¶¶ 21–23.) Additionally, the incorrect SSN used in the first inquiry was supplied by Charter, not generated or altered by Experian. (JAF at ¶¶ 12–13.) Any conclusion by a Charter representative that Plaintiff was deceased therefore cannot, without evidence of a misleading Experian communication, establish an actionable inaccuracy under *Shaw*.

Accordingly, Plaintiff cannot identify Experian reporting that was either factually incorrect or "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 757. As a result, Claims I and II fail as a matter of law, and summary judgment is warranted.

*c. Alternatively, Plaintiff Cannot Establish That Experian Used Unreasonable Procedures.*

The Court need not reach the reasonableness of Experian's procedures because Plaintiff cannot establish any inaccuracy. *Shaw*, 891 F.3d at 756 ("[B]ecause Appellants have not made such a showing, we need not consider the reasonableness of Experian's procedures."). But even assuming an actionable

inaccuracy, Claims I and II independently fail because Plaintiff has not identified any evidence from which a reasonable jury could conclude that Experian used unreasonable procedures.

Section 1681e(b) requires a CRA to "follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b); *see also* Cal. Civ. Code § 1785.14(b). "A credit reporting agency does not violate § 1681e(b)… 'simply by reporting information that may be inaccurate.'" *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (quoting *Darrin v. Bank of Am., N.A.*, No. 2:12-cv-00228-MCE-KJN, 2014 WL 1922819, at *6 (E.D. Cal. May 14, 2014)); *Guimond*, 45 F.3d at 1333 ("[A]n agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."). Courts have granted summary judgment in favor of CRAs where plaintiffs could not establish that the CRA's procedures were unreasonable. *See Stevens v. Genesis Credit Mgmt., LLC*, No. 6:15–cv–01898–JR, 2017 WL 2695335, at *4 (D. Or. May 2, 2017) ("Plaintiff failed to argue or submit evidence suggesting these procedures are unreasonable or that Equifax did not follow these procedures in preparing his consumer report."); *Grigoryan*, 84 F. Supp. 3d at 1068 (granting summary judgment to a CRA because "[t]he fact that the information may have been inaccurate does not demonstrate that [the CRA] did not employ reasonable procedures to ensure the accuracy of the information under § 1681e(b)."); *Darrin*, 2014 WL 1922819, at *7 (denying a plaintiff's motion to reconsider the dismissal of § 1681e(b) claims against CRA defendants because "the information that [a furnisher] reported and that appeared in the CRA Defendants' reports is not attributable to the CRA Defendants' § 1681e(b) procedures," and so "there [were] no allegations in the record that the CRA Defendants' procedures were unreasonable under § 1681e(b)."); *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921–22 (9th

Cir. 2019) (affirming summary judgment in Experian's favor in part because Experian did not act unreasonably).

The same principles apply here. Charter supplied an SSN that differed from Plaintiff's actual SSN by one digit. (JAF at ¶¶ 12–13.) Experian did not generate, alter, or introduce that identifier. (Id.) When Charter submitted Plaintiff's correct SSN, Experian returned Plaintiff's corresponding file without a deceased indicator. (JAF at ¶ 14.) Charter's own records further state that neither session on June 3, 2025, received deceased-SSN indicators from Experian. (JAF at ¶¶ 21–23.) None of these events indicate that Experian's matching procedures confused Plaintiff's correct SSN with that of a deceased individual or maintained inaccurate deceased information in her file.

Further, Plaintiff has not identified a specific defect in Experian's procedures. The present record contains no expert opinion that Experian's matching process was unreliable, no evidence that Experian failed to follow an established procedure, and no evidence identifying a different procedure required by the FCRA or CCRAA under these circumstances. Speculation that some additional safeguard might have detected a subscriber's input error does not create a triable issue.

The circumstances identified in this record do not resemble cases in which a CRA possessed facially contradictory information and disregarded it. Here, the evidence presently identified shows that different identifying information was submitted in separate inquiries, and the inquiry using Plaintiff's correct SSN returned her file without a deceased indicator. (JAF at ¶ 14.) Plaintiff has identified no contrary information in Experian's possession that made its processing of the submitted identifiers unreasonable.

Moreover, Plaintiff's theory would effectively require Experian to assume that an identifier supplied by a subscriber was erroneous and independently

determine the identifier the subscriber intended to submit. Section 1681e(b), however, imposes a reasonable-procedures standard, not strict liability for every error appearing in the reporting process. *See Guimond*, 45 F.3d at 1333 (explaining that, "[t]he FCRA does not impose strict liability," and a CRA may avoid liability where "an inaccurate report was generated despite the agency's following reasonable procedures").

Accordingly, even if Plaintiff could establish an actionable inaccuracy, she has no evidence tying it to an unreasonable Experian procedure. Experian is therefore entitled to summary judgment on Claims I and II on this independent ground as well.

2. Plaintiff's Response

**A. The Court Should Not Consider the Charter Letter or CHRTR000001–000009.**

Experian's accuracy argument rests on Charter's May 21, 2026 letter and CHRTR000001–000009. (JAF ¶¶ 18–26.) Neither may be considered, for two independent reasons.

*First*, Rule 37(c)(1). Experian answered Request for Production No. 11 on May 12, 2026 by promising to "provide the response to Plaintiff." It received Charter's response on May 21, 2026, and did not provide it for 144 days (the letter, for 161 days). (JAF ¶ 54.) A party that fails to supplement "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Experian bears that burden. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001). The delay was not harmless. It ran past the point at which Plaintiff could have pursued Charter while the schedule was being reset. Experian now opposes the one step that would cure it:

Plaintiff's motion for leave to serve a narrow subpoena on Charter, set for hearing December 9, 2026. (Bretz Decl. ¶ 19.)

*Second*, Rule 56(c)(2). Experian offers Charter's documents only through its own attorney, who has no personal knowledge of Charter's records, with no custodian declaration and no Rule 902(11) certification. (King Decl. ¶¶ 3–4.) Experian's counsel confirmed in writing on November 6, 2026 that Experian "does not currently have a custodian declaration or Rule 902(11) certification for the Charter production." (JAF ¶ 71; Bretz Decl. ¶ 28, Ex. 15.) An attorney's declaration without personal knowledge "does not provide authentication." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773–74, 777 (9th Cir. 2002). Under Rule 56(c)(2), once Plaintiff objects, Experian must show the material can be presented in admissible form. Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. It cannot do so for the letter. The letter was written by Charter's in-house litigation counsel in response to a subpoena. Its conclusions ("Charter did not receive a deceased SSN response"; Experian "would not have returned a valid credit score") are hearsay, lack personal knowledge, and are not records of a regularly conducted activity. Fed. R. Evid. 602, 701, 802, 803(6). CHRTR000009 is likewise an undated narrative summary with an interpretive key, not a system record made at or near the time. Charter itself says the API logs of Experian's actual responses were purged. (JAF ¶ 51.) The specific objections appear in the Joint Appendix of Objections.

**B. Without the Charter Material, Experian Has No Admissible Evidence of What It Sent Charter.**

The moving party must first produce evidence negating an essential element, or show that the nonmovant lacks such evidence. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). Experian's only remaining evidence of what it returned on June 3, 2025 is Ms. Fievez's statement that, "[b]ased

on my review of Experian's records, neither June 3, 2025 response identified Plaintiff as deceased." (Fievez Decl. ¶ 32.) But Experian swore in discovery that it does not keep copies of the reports it sends to subscribers. (JAF ¶ 39.) The records Ms. Fievez attaches are Administrative Reports generated on September 30, 2025, after Plaintiff sued Experian. (Fievez Decl. ¶¶ 25–27.) They list the inquiry. They do not show the identifiers Charter submitted, the Fraud Shield codes Experian returned, or the content of either response. A witness may not describe the contents of records that are not before the Court and that her employer says it does not keep. Fed. R. Evid. 602, 1002. Experian has not carried its initial burden.

**C. Even If Considered, Charter's Records Create a Genuine Dispute on Accuracy.**

If the Court considers Charter's records, it must consider all of them, not just the "Deceased = NO" line. Those records show that Experian's response to Session 1 carried Fraud Shield codes 13 and 27: "High probability Social Security number belongs to another" and "Social Security number reported more frequently for another," as Experian's own published Fraud Shield materials describe them. (JAF ¶¶ 35, 37.) The Session 1 order was not submitted; the Session 2 order, with no Fraud Shield code, was. (JAF ¶ 25.) The Spectrum representative told Plaintiff she was denied because she was dead and attributed that to Experian. (JAF ¶ 15.) A reasonable jury could find that Experian's Session 1 response told Charter that the applicant's identity was associated with another person, that Charter acted on it, and that the response was inaccurate or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citation omitted).

Experian's declarants define only codes 5 and 25. (Fievez Decl. ¶ 23.) They say nothing about codes 13 and 27, the codes Experian actually returned. Those are

not deceased codes. They are identity-mismatch codes: by their published meaning, Experian told Charter that the Social Security number on Plaintiff's application probably belonged to someone else and was reported more often for someone else. (JAF ¶¶ 35, 37.) In credit-reporting terms, that is a mixed-file signal, and if the number Charter submitted was Plaintiff's own, as she testified, the signal was false. (JAF ¶ 50.) A response telling a lender that a consumer's own Social Security number belongs to another person is inaccurate whether or not it uses the word "deceased," and it is exactly the kind of information that "can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890. The session that carried those codes did not go through, and a jury could reasonably infer why. (JAF ¶ 25.) Nor is this a new theory. The FAC alleges that Experian told Spectrum that Plaintiff's identifiers "were associated with that of a deceased person," a communication "intended to communicate a high risk of fraud." (ECF No. 29 ¶ 18.) Codes 13 and 27 are fraud-risk messages that the Social Security number on her application was associated with another person. Consumers do not see them (Fievez Decl. ¶¶ 8, 22), and Experian did not provide the Charter records showing them until October 12, 2026, after discovery closed. (JAF ¶ 54.) And Experian itself offers as undisputed that the Spectrum representative told Plaintiff the results of the first inquiry showed she was deceased (JAF ¶ 15), the same inquiry that returned codes 13 and 27 (JAF ¶ 25). Experian's own manual describes Fraud Shield as information that appears "on a consumer's credit report" to identify "inconsistencies between the credit application and the consumer's credit report." (JAF ¶ 38.) Fraud-alert information that a credit reporting agency delivers with a credit report is part of what it reports about the consumer. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 707–08, 712 (3d Cir. 2010) (rejecting argument that an OFAC alert delivered with a credit report fell outside the FCRA, and holding that OFAC alert information is part of the

consumer's "file"). Experian chose not to explain what it told Charter. On summary judgment, that gap is construed against the movant.

Experian's premise that "Charter supplied the incorrect SSN" is also not established. Plaintiff testified she gave Spectrum her correct SSN. (JAF ¶ 50.) The inquiry SSN is redacted from Experian's exhibit. (King Decl. Ex. B at CHRTR000002.) Experian's records show it carried a one-digit SSN variant on a record tied to her until September 2023 (JAF ¶ 47), and continued to carry four separate prior-name records (with ten tradelines) on her true SSN even after reporting her name "Updated" in 2023 (JAF ¶¶ 68, 75)—explaining how her own SSN could trigger codes 13 and 27 ("belongs to" or "reported more frequently for another") by treating her unmerged prior-name records as another consumer. Whether Session 1 involved the 2023 SSN variant or Experian's fragmented name records on her true SSN is within Experian's and Charter's exclusive control. (Bretz Decl. ¶¶ 14–16.) Nor does the page Ms. Fievez cites for "two inquiries" show two: it lists one June 3 Charter entry, with no time and name record N=0000000000. (JAF ¶ 58; Fievez Decl. ¶ 28.)

Plaintiff's testimony that she has never seen an Experian report showing her as deceased (JAF ¶ 17) does not help Experian. Section 1681e(b) concerns reports Experian "prepares" for others. Experian's declarant explains that a consumer disclosure is a different document from a consumer report (Fievez Decl. ¶ 8), and that a Fraud Shield response is not placed in the consumer's file (*id.* ¶ 22). By Experian's own account, the Session 1 response would not appear in her consumer disclosures. Experian's manual, however, states that Fraud Shield messages "will appear . . . in the Statement and Notices section" of Experian's own report screen, shows them listed with a "Date Added," and provides a form for deleting them. (JAF ¶ 59.) Experian has produced no such history for Plaintiff's file. (Bretz Decl. ¶¶ 24–

25.)

*Shaw v. Experian Information Solutions, Inc.*, 891 F.3d 749 (9th Cir. 2018), does not control. There, the meaning of Experian's code combination was undisputed, and the inaccuracy came from Fannie Mae's misreading of accurate codes. *Id.* at 757–58. Here, Experian has not said what codes 13 and 27 meant, what SSN Charter submitted, or what Experian returned. *Shaw* was decided on a developed record. This one is incomplete because Experian made it so. *Lovelady* is further afield. It is an unpublished memorandum disposition that is not precedent, 9th Cir. R. 36-3(a), and it turned on undisputed facts establishing the consumer's joint liability under community-property law and on her failure to offer evidence that creditors would misread the designation. *Lovelady*, 2026 WL 637398. Here, what Experian returned to Charter is the disputed fact.

**D. The Reasonableness of Experian's Procedures Is a Jury Question.**

"The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." Guimond, 45 F.3d at 1333. Ms. Fievez describes Experian's procedures in general terms, mostly how Experian vets furnishers. (Fievez Decl. ¶¶ 10–14.) She does not explain how Experian matched an inquiry when its file had carried a one-digit SSN variant (JAF ¶ 47), or why it returned identity-mismatch codes weeks after Plaintiff disputed by telephone (JAF ¶¶ 35, 49). Experian's argument that Plaintiff identified no "specific defect" asks her to prove procedures and outputs Experian has withheld. (JAF ¶¶ 39–40, 76.) Experian's File One records also show identity-matching defects that persisted after its 2023 update: twelve separate name records on Plaintiff's PIN (including four unmerged prior-name records carrying ten tradelines on her SSN, "SP=CHRISTOPHER," and "SSNRPTDCNT=37"), a November 2023 disclosure to "Alexandrea Brehz," new 2025 misspellings, and all six 2025 phone disputes routed

to zero-tradeline record N=0000020333. (JAF ¶¶ 68–70, 74–75.) Experian also suppresses items on an unproduced "7X report." (JAF ¶ 60.)

**E. Alternatively, the Court Should Defer Ruling Under Rule 56(d).**

A court may defer ruling where the nonmovant shows by declaration the specific facts she would obtain, that they exist, and that they are essential to her opposition. Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008). Plaintiff's declaration identifies: (1) the identifiers Charter submitted and the complete responses, including Fraud Shield codes, Experian returned on October 24, 2024 and June 3, 2025; (2) the meaning of codes 13 and 27; (3) a Charter custodian's authentication; and (4) the "daily inquiry report" Experian hosts. (Bretz Decl. ¶¶ 14–19.) Charter says its API logs were purged, but describes the daily inquiry report as one "which Experian hosts on its side," and Experian's records confirm the inquiries. (JAF ¶¶ 51–53.) Whether Experian retained what Charter submitted and what Experian returned is within Experian's control. Plaintiff received Charter's production on October 12, 2026, five months after the cutoff, and moved promptly. (JAF ¶ 54; Bretz Decl. ¶ 19.) Plaintiff also identifies (5) the "Statement and Notices" history for her file as of June 3, 2025; (6) Experian's internal 7X exclusion report; (7) the agent notes, agent names, and Calabrio recordings of the contacts logged as disputes (including the six 2025 calls routed to N=0000020333); (8) any delivery record for the September 30, 2025 report; and (9) the ACDVs and Disputes: Trades Participant Guide Experian stated on May 12, 2026 it was producing (RFPs 1, 6, 8) but omitted. (Bretz Decl. ¶¶ 24–26; JAF ¶¶ 55, 59–60, 66–67, 74, 76.) Plaintiff's August and September 2026 Spectrum verification attempts still fail, underscoring her need for Charter's 2025–2026 records in ECF No. 110. (JAF ¶ 73; Bretz Decl. ¶ 23A; Exs. 17–19.) On November 18, 2026, Experian declined, citing the cutoff, to say whether it supplied

data to Charter for those attempts. (Bretz Decl. ¶ 24A; Ex. 20.) Experian's Administrative Report reflects September 30, 2025, not June 3 (Fievez Decl. ¶ 26); Experian produced its file and manual on May 12, 2026, after the May 6 cutoff; and item (8) arose when Experian's November 3, 2026 declaration claimed the report was "provided." (Bretz Decl. ¶ 24.)

The delay in obtaining Charter's records was also Experian's, not Plaintiff's. On May 12, 2026, Experian represented that it had subpoenaed Charter and would provide the response. (Bretz Decl. ¶ 17.) Over the following five months Experian's counsel of record changed repeatedly (ECF Nos. 64–66, 79–82, 84, 105, 107), and Plaintiff did not receive Charter's production until October 12, 2026. (Bretz Decl. ¶¶ 18, 27.) Experian then obtained an order extending the last day to hear motions to December 16, 2026, together with the later pretrial and trial dates, while fact discovery remained closed. (ECF Nos. 86, 91.) Plaintiff does not suggest that any substitution was improper. The point is that Plaintiff did not cause the delay, and Rule 56(d) exists for this situation.

**B. Experian's Argument 2**

1. Experian Is Entitled to Summary Judgment on Claims III and IV Because Plaintiff Cannot Establish That Experian Received Her Alleged Disclosure Request.

Plaintiff's claims under 15 U.S.C. § 1681g and California Civil Code §§ 1785.10 and 1785.15 require her to establish that she requested the disclosure she alleges Experian failed to provide. Section 1681g(a) requires a consumer reporting agency, "upon request" and subject to the identification requirements of § 1681h(a)(1), to disclose specified information in the consumer's file. 15 U.S.C. § 1681g(a). The CCRAA similarly requires disclosure "upon request and proper identification of any consumer." Cal. Civ. Code § 1785.10(a); *see also id.* § 1785.15.

Courts have granted summary judgment where a plaintiff cannot produce evidence establishing the request necessary for a § 1681g claim. In *Drew v. Equifax Information Services, LLC*, the court explained that § 1681g requires a CRA to provide a consumer disclosure "upon request" and granted summary judgment to Experian and Equifax because the plaintiff "provide[d] no evidence that CRAs failed to provide a requested report." No. C 07-0726 SI, 2009 WL 595459, at *6 (N.D. Cal. Mar. 5, 2009).

The court granted a CRA summary judgment when there "[was] no evidence that Plaintiff contacted [the CRAs] beyond the two times both Defendants have records of" when the plaintiff claimed multiple phone calls but produced no evidence to support those claims. *Douglass v. USAA Sav. Bank, Inc.*, No. CV 16-2601-R, 2016 WL 9173463, at *3 (C.D. Cal. Sept. 16, 2016). Because the CRAs "responded to Plaintiff's request for the information in her credit file," they satisfied their disclosure duties under § 1681g and were not liable for producing information when they did not receive requests. *Id.*

The record here does not establish that Experian received a disclosure request from Plaintiff on or about June 24, 2025. Plaintiff alleges that she attempted to obtain her Experian file through annualcreditreport.com and received the message: "A condition exists that prevents Experian from being able to accept [Plaintiff's] request at this time." (JAF at ¶ 29.) Experian's disclosure records contain no request from Plaintiff on or about June 24, 2025. (JAF at ¶ 30.) Plaintiff's deposition testimony does not establish otherwise. She testified that she did not know the date on which she attempted to obtain the report and stated only that the alleged timing "sound[ed] consistent." (JAF at ¶ 31.) Nor has Plaintiff produced any confirmation of a June 24, 2025, request or any other record showing that Experian received one.

Further, although Plaintiff alleges she made a request for a consumer

disclosure, she acknowledges that she received an error message that the request was not received by Experian. Experian's records concur with Plaintiff's allegations and do not reflect any June 24, 2025, disclosure request from Plaintiff. Like in *Drew* in which the plaintiff provided no evidence that the CRAs failed to provide a requested report, Plaintiff has produced no competent record establishing that Experian received her request. There is no disputed fact in this case as to whether Experian received the disclosure request.

Accordingly, Plaintiff cannot establish that Experian failed to provide a disclosure in response to a request triggering its obligations under § 1681g or the CCRAA. Experian is therefore entitled to summary judgment on Claims III and IV.

2. Plaintiff's Response

**A. Experian's Own Declarant Concedes the Request Reached Experian and Was Refused.**

Experian argues that Plaintiff "acknowledges that she received an error message that the request was not received by Experian." That misstates the record. The message did not say the request was not received. It said that "[a] condition exists that prevents Experian from being able to accept [the] request." (JAF ¶ 46.) Experian's declarant explains what that means: the message "indicates that the request was not accepted, and a request that is not accepted is not recorded in the Disclosure Log." (JAF ¶¶ 42–43.) A request cannot be "not accepted" unless it was received and evaluated. Experian's "no record" evidence (JAF ¶ 30) is therefore the predictable result of Experian's own design, not evidence that no request was made.

**B. Plaintiff's Evidence Establishes the Date and the Request.**

Plaintiff did not know the exact date at her deposition. (JAF ¶ 31.) The documents fix it. Plaintiff obtained her TransUnion report at 21:49 UTC and her Equifax report at 21:52 UTC on June 24, 2025, through annualcreditreport.com.

Equifax's report bears an "ACR" (annual credit report) reference. (JAF ¶¶ 44–45.) The Experian refusal page she captured carries the centralized source's "Get your next report or finish" button. (JAF ¶ 46; Bretz Decl. ¶¶ 5–9, Ex. 1.) Plaintiff authenticates the capture from personal knowledge. That evidence distinguishes *Drew* and *Douglass*. In each, the plaintiff had nothing beyond his or her own account: in *Drew*, the plaintiff "provide[d] no evidence that CRAs failed to provide a requested report," and in *Douglass*, as Experian describes it, involved no evidence of the additional calls the plaintiff claimed. *Drew v. Equifax Info. Servs., LLC*, No. C 07-00726 SI, slip op. at 11 (N.D. Cal. Mar. 5, 2009) (ECF No. 327); *Douglass v. USAA Sav. Bank*, 2016 WL 9173463 (as described in Experian's Argument 2).

**C. Experian Never Identified the "Condition," and the Law Requires More.**

A nationwide consumer reporting agency must provide a free annual disclosure "upon request" made through the centralized source. 15 U.S.C. § 1681j(a)(1)(A)–(B); *see id.* § 1681g(a). The centralized source must be able to accept requests. If the refusal rested on identity, the consumer must be told what additional information is needed to verify it. 12 C.F.R. § 1022.136(b)(2)(i), (b)(2)(iv)(C). Experian has never claimed that Plaintiff failed to provide proper identification under § 1681h(a)(1), and its page did not ask her for more. If the refusal rested on some other "condition," Experian has never said what it was. And when asked in Interrogatory No. 7 to identify "the specific system flag, error code, or identity-verification condition that caused the denial," Experian pointed to documents under Rule 33(d). (JAF ¶ 41.) Its declarant now says refused requests leave no record at all. (JAF ¶ 42.) Experian cannot refuse to identify the condition in discovery and then obtain judgment because the record does not show one.

Experian may point out that the page invited Plaintiff to mail a request. An instruction to start over by mail does not show that Experian lawfully refused the

online request. Whether the refusal was justified depends on what the "condition" was, and only Experian knows. If the condition was the same identity-matching problem behind the June 3 codes, it is further evidence on Claims I and II. The CCRAA claims turn on the same facts. Cal. Civ. Code §§ 1785.10(a), 1785.15. Summary judgment on Claims III and IV should be denied.

**D. Experian's Own Log Does Not Match Its Declarant's Account of What It Provided.**

Experian asks the Court to treat its Disclosure Log as conclusive proof that no June 24, 2025 request was received. (JAF ¶ 30.) Yet Experian's own File One report (EXP_Bretz_000451, 000452, 000464) and consumer report (EXP_Bretz_000024) both record June 24, 2025 activity on N=0000030484 (2370810 ZD CNS and CREDITMATCH). (JAF ¶ 75.) Moreover, Experian's declarant states that Experian "provided Plaintiff with a consumer disclosure" on September 30, 2025 (JAF ¶ 32), while the Disclosure Log records that report as an internal "Admin" / "Exception" entry with "No CDIs" and "No LETTERS," unlike other disclosures listing a CDI request date, and Plaintiff never received it. (JAF ¶¶ 55–57.) Unlike Douglass, where the agencies' records were unrebutted, the reliability of Experian's records is disputed here. 2016 WL 9173463, at *3.

**C. Experian's Argument 3**

1. <u>Experian is Entitled to Summary Judgment on Plaintiff's Claim of Willful Noncompliance Under the FCRA.</u>

Even if Plaintiff could establish an underlying violation of the FCRA, she cannot recover statutory or punitive damages under 15 U.S.C. § 1681n without establishing that Experian's noncompliance was willful. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007); *Shaw,* 891 F.3d at 761. "Willfulness" includes "both knowing and reckless violations of a standard." *Safeco*, 551 U.S. at 57.

Summary judgment in favor of a defendant is appropriate where the plaintiff "has failed to set forth any evidence of willfulness regarding any remaining claim." *Banneck v. HSBC Bank USA, N.A.*, No. 15-cv-02250-HSG, 2016 WL 3383960, at *9 (N.D. Cal. June 20, 2016); *see Moran v. Screening Pros, LLC*, 25 F.4th 722, 730 (9th Cir. 2022) (affirming summary judgment in favor of a CRA because no reasonable fact finder could say that "the [CRA]'s violation of § 1681c(a)(5) was negligent, much less willful."); *see also Leslie v. Experian Info. Sols., Inc.*, No. 21-00334 JMS-RT, 2023 WL 5000770, at *6 (D. Haw. Aug. 4, 2023) (granting summary judgment to Experian where plaintiff did not show that Experian knowingly or recklessly violated the FCRA).

Under *Safeco*, a defendant acts recklessly only where its conduct creates a risk of violating the FCRA "substantially greater than the risk associated with a reading that was merely careless." 551 U.S. at 69; *see Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). The Ninth Circuit has emphasized that an objectively unreasonable interpretation does not, by itself, establish recklessness because doing so would "improperly conflate recklessness and negligence." *Syed v. M-I, LLC*, 853 F.3d 492, 505 (9th Cir. 2017). Thus, even an FCRA violation does not establish willfulness unless the defendant crosses the "negligence/recklessness line." *Id.* at 505–06.

*Shaw* is particularly instructive because the Ninth Circuit applied that standard directly to Experian. There, the Ninth Circuit held that "even assuming that Experian violated the FCRA," the plaintiffs had failed to show "that any violation by Experian was willful." 891 F.3d at 761. Accordingly, an assumed underlying violation is not enough; Plaintiff must produce evidence from which a reasonable jury could find that Experian acted knowingly or recklessly. *Id.* at 760.

Plaintiff fails to make that showing here. As to her inaccurate-reporting and

reasonable-procedures claims, the record contains no evidence that Experian knowingly reported Plaintiff as deceased. The first June 3, 2025 inquiry used an SSN one digit off from Plaintiff's SSN. (JAF at ¶ 12.) The second inquiry on June 3, 2025, used Plaintiff's correct SSN and returned her file without a deceased indicator. (JAF at ¶ 14.) Charter's records further state that neither inquiry returned deceased-SSN information from Experian. (JAF at ¶¶ 21–23.) Even assuming Plaintiff could establish that Experian should have employed some additional procedure in processing Charter's inquiry, that would not establish the "substantially greater" risk required for reckless liability under *Safeco*. 551 U.S. at 69; *Marino*, 978 F.3d at 673.

Nor can Plaintiff establish willfulness as to her § 1681g disclosure claim. Experian's records contain no consumer disclosure request from Plaintiff on or about June 24, 2025. (JAF at ¶ 30.) Plaintiff alleges that her attempt through annualcreditreport.com resulted in a message stating that a condition prevented Experian from accepting the request at that time. (JAF at ¶ 26.) The record contains no evidence that Experian knowingly or recklessly failed to comply with the obligation to provide a consumer disclosure upon request, and therefore, summary judgment is appropriate. *See Banneck*, 2016 WL 3383960, at *9; *see also Perkins v. Navy Fed. Credit Union*, No. 2:25-cv-02146-GMN-DJA, 2026 WL 2874385, at *15 (D. Nev. Sept. 23, 2026) (granting summary judgment to Experian on a § 1681n claim because "Experian's reporting did not violate a reasonable reading of the FCRA's terms.").

In short, even assuming Plaintiff could establish an underlying FCRA violation, she has not produced evidence from which a reasonable jury could find that Experian acted knowingly or recklessly. Experian is therefore entitled to summary judgment on Plaintiff's claim for statutory and punitive damages under

15 U.S.C. § 1681n.

2. Plaintiff's Response

**A. Argument 3 Cannot Dispose of Any Claim.**

Argument 3 addresses only statutory and punitive damages under 15 U.S.C. § 1681n. Actual damages for negligent noncompliance remain available under § 1681o, and the CCRAA provides its own remedies. Cal. Civ. Code § 1785.31. At most, Argument 3 could narrow the remedies. It cannot support judgment "on each and every claim."

**B. A Reasonable Jury Could Find Reckless Disregard.**

Willfulness includes reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A jury could find reckless disregard on this record, which shows that Experian was on notice of the problem. By September 2023, Experian knew its file had carried an SSN one digit off from Plaintiff's on a record tied to her. (JAF ¶ 47.) Plaintiff disputed by telephone on May 7, 2025. (JAF ¶ 49.) Less than a month later, Experian's system returned codes that Experian's own published materials describe as signaling that the SSN on the application is more closely associated with another consumer, and that order was not submitted. (JAF ¶¶ 25, 35, 37.) Three weeks after that, Experian refused her centralized-source request for an undisclosed "condition" and kept no record of the refusal. (JAF ¶¶ 42–46.) The notice began earlier. In September 2023, Plaintiff told Experian in a letter sent by certified mail that it was "incorrectly reporting me as deceased," and Experian's log shows no dispute item opened on that concern. (JAF ¶¶ 61–62, 72.) After routing her file to its litigation team in March 2024, Experian logged thirteen contacts as disputes, including Plaintiff's written request for the report it sent Capital One, without opening a single dispute cycle. (JAF ¶¶ 63–66.) A jury could find that Experian set aside a consumer's repeated complaints because she was in litigation.

Experian's position on what its deceased message means is also inconsistent. Its declarant says such a response "is not a statement by Experian that the consumer named on the inquiry has died" and is not placed in the consumer's file. (Fievez Decl. ¶ 22.) Yet Experian's procedures manual tells its agents to explain that "a notice appears on your personal credit report" when an SSN is recorded as deceased and to send a deceased-SSN notification. (Fievez Decl. Ex. A, EXP_Bretz_000247.) Instead, on May 7 and June 11, 2025, Experian routed all six calls (3499953 CNX) to zero-tradeline record N=0000020333 with "No LETTERS." (JAF ¶ 74.)

*Shaw* is not to the contrary. Its willfulness holding rested on the objective prong of *Safeco*: no statute, agency guidance, or case law had warned Experian that its reading of the reporting standard was wrong. 891 F.3d at 760–61. This case does not turn on Experian's reading of an unclear statute. It turns on Experian's disregard of facts in its own file. *Perkins v. Navy Federal Credit Union*, on which Experian also relies, is no different: it involved no § 1681g claim, and its willfulness ruling followed from its finding that there was no violation at all. 2026 WL 2874385, at *15. The evidence above is of a different kind. To the extent more is needed, the facts that would show what Experian knew and returned are the subject of Plaintiff's Rule 56(d) request. (Bretz Decl. ¶¶ 14–19.)

## V. CONCLUSION

### A. Experian's Conclusion

For the foregoing reasons, Experian respectfully requests that the Court grant Experian's Motion for Summary Judgment, enter summary judgment in favor of Experian, and dismiss Plaintiff's claims with prejudice.

### B. Plaintiff's Conclusion

The Court should deny Experian's motion. In the alternative, the Court should (1) decline to consider the Charter letter and CHRTR000001–000009 under Rules

37(c)(1) and 56(c)(2), and (2) defer ruling under Rule 56(d) until Charter responds to the subpoena that is the subject of Plaintiff's pending motion for leave and until Experian produces the records identified in Bretz Decl. ¶¶ 14 and 24. If the Court grants any part of Argument 3, Plaintiff requests that the order make clear that her claims for actual damages under 15 U.S.C. § 1681o and the CCRAA proceed to trial.

Respectfully submitted this 18th day of November, 2026.

Dated: November 18, 2026

**VENABLE LLP**

By: */s/ Anna D. Higgins*
Anna D. Higgins
Nicole N. King

*Attorneys for Defendant Experian Information Solutions, Inc.*

Dated: November 18, 2026

By: */s/ Alexandrea Bretz*
Alexandrea Bretz

*Pro Se Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S STANDING ORDER FOR MOTIONS FOR SUMMARY JUDGMENT**

The undersigned counsel of record for Defendant Experian Information Solutions, Inc. certifies that Experian's portion of this Memorandum of Points and Authorities is 17 pages, which complies with the Court's Standing Order for Motions for Summary Judgment (ECF No. 19) at ¶ 6.

Dated: November 18, 2026

**VENABLE LLP**

By: */s/ Anna D. Higgins*
Anna D. Higgins
Nicole N. King

*Attorneys for Defendant Experian Information Solutions, Inc.*

The undersigned *pro se* plaintiff certifies that Plaintiff's portion of this Memorandum of Points and Authorities is 18 pages, which complies with the Court's Standing Order for Motions for Summary Judgment (ECF No. 19) at ¶ 6.

Dated: November 18, 2026

By: */s/ Alexandrea Bretz*
Alexandrea Bretz

*Pro Se Plaintiff*

## ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 18, 2026

**VENABLE LLP**

By: */s/ Anna D. Higgins*
Anna D. Higgins
Nicole N. King

*Attorneys for Defendant Experian Information Solutions, Inc.*