# TAB 2

# <u>**EXHIBIT A**</u>

Charter COMMUNICATIONS

May 21, 2026

***<u>Via Email and Fedex</u>***
Gregory J, Myers
100 Washington Ave., S, Ste 2200
Minneapolis, MN 55401
gjmyers@locklaw.com

Re: *Alexandrea Bretz vs. Experian Information Solutions, Inc.*
*Case Number: 2:25-cv-01865-SPG-MAA*

Mr. Myers,

I write in response to Experian's May 6, 2026 subpoena served on Charter Communications Inc., and attached materials that are responsive to Experian's subpoena and which satisfies Charter's obligations.

Charter sends information systematically through an API to Experian for credit inquiries. Charter receives Experian's response back via API as well. With regard to the "**Credit Inquiries**" that are the subject of and as defined in the subpoena, Charter can no longer retrieve any API details because the logs containing last year's records have since been purged in the ordinary course of business pursuant to Charter's document retention policy. Charter, however, attaches two reports with information related to the "**Credit Inquiries**."

First, Charter has access to a daily inquiry report—which Experian hosts on its side—with information related to two "**Credit Inquiries**" in June 2025. *See* CHTR000001 – CHRTR000008. Please note that this document contains personally identifiable information, and that information has been redacted.[1] As you will note, though, Charter did not receive a deceased SSN

[1] As a cable operator, Charter is subject to the Cable Privacy Act ("Cable Act"). *See* 47 U.S.C. § 551. The Cable Act prohibits Charter from disclosing personally identifiable information concerning any subscriber without the subscriber's consent or an applicable exception. *See* 47 U.S.C. § 551(c). It also requires Charter to take such actions as are necessary to prevent unauthorized access to such personally identifiable information by anyone other than the subscriber. *See id.* Per § 551(c)(1), Charter shall not disclose subscriber information to a third party without the prior written or electronic

Charter
COMMUNICATIONS

response from Experian on either of those inquiries. If it had, then the fraud shield code from Experian in column AA (Fraud Shield Cd) would have been a 5 (signifies the SSN submitted with the inquiry is reported as deceased), or a 25 (signifies the best matched SSN at Experian is reported as deceased).

Also, Charter had information from reporting data related to the "**Credit Inquiries**" for two orders in June 2025. *See* CHRTR000008, which includes a key to help decipher the information. One of the orders was abandoned (Session 1) and the other one was submitted (Session 2). Based on the Experian credit check, Charter offered financing of $1000 on the orders and a phone buyout amount of $1500. Additionally, Charter did not receive a deceased SSN response from Experian on either of those inquiries. Lastly, if Experian had identified the individual as deceased in the inquires, then it would not have returned a valid credit score on both inquiries.

Sincerely,

Christie Schmieder
VP, Assistant General Counsel – Litigation

---

consent of the subscriber. Without consent, Charter may only disclose subscriber information if one of the exceptions set forth in Section 551(c)(2) exists, including a court order authorizing the disclosure and notice to the subscriber before any disclosure can be made. If you obtain a court order, then Charter will comply with the court order.

12405 Powerscourt Dr, St. Louis, MO 63131 Christie.Schmieder@charter.com