# TAB 6

Nicole N. King (SBN 290204)
Anna D. Higgins (SBN 366177)
**VENABLE LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901
Email: nnking@venable.com
adhiggins@venable.com

Attorneys for Defendant
Experian Information Solutions, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Alexandrea Bretz,

Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS INC. and EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendants.

Case No. 2:25-cv-01865-SPG-ASx

**DECLARATION OF TERESA FIEVEZ IN SUPPORT OF DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Hearing Date: December 16, 2026
Hearing Time: 1:30 p.m.
Courtroom: 5C

Action Filed: March 4, 2025
Trial: March 9, 2027

# DECLARATION OF TERESA FIEVEZ

Pursuant to Federal Rule of Civil Procedure 56(c)(4), 28 U.S.C. § 1746, and Judge Sherilyn Peace Garnett's Standing Order for Motions for Summary Judgment (ECF No. 19), I, Teresa Fievez, declare as follows:

1. I am a Senior Litigation Analyst within Litigation Support for Experian Information Solutions, Inc. ("Experian"), located in Allen, Texas. I have been employed by Experian from 2003 to 2013 and from 2021 to the present. My responsibilities include processing, responding to, and examining consumer disputes or requests for reinvestigations, researching records regarding Experian furnishers relating to consumer disputes or requests for reinvestigations, and verifying and updating consumers' credit profiles.

2. Based on my experience at Experian, I am familiar with Experian's policies and procedures pertaining to consumer disputes, the compilation, retention, and disclosure of consumer credit information, including the procedures by which Experian processes credit inquiries submitted by its subscribers, matches the identifying information submitted with an inquiry to the information in its database, returns Fraud Shield indicators to subscribers that elect to receive them, and processes consumer requests for file disclosures under section 1681g of the Fair Credit Reporting Act ("FCRA"). I am also familiar with Experian's policies and procedures as a consumer reporting agency ("CRA") operating under the FCRA.

3. I am also familiar with the manner and procedures by which the records, logs, and other documents contained in Experian's files are prepared and maintained. Those records are prepared by agents or employees of Experian, or generated by Experian's systems, in the performance of their regular business duties, at or near the time of the acts, events, or conditions they record. Those records are made either by persons with knowledge of the matters they record or from information supplied by persons with such knowledge. It is Experian's regular business practice to make and

maintain such records in the course of its regularly conducted business activity. The Experian records identified in this Declaration are records of this kind.

4. I am over eighteen years of age and competent to make this Declaration. I make this Declaration in support of Experian's Motion for Summary Judgment in the above-captioned matter. The facts set forth herein are based upon my personal knowledge, including knowledge gained through my position at Experian and my review of Experian's business records described below, and if I were called upon to testify to them, I could and would do so.

**Experian's Role as a Consumer Reporting Agency**

5. Experian operates as one of the country's three major CRAs pursuant to the FCRA. The other two CRAs are Trans Union, LLC ("Trans Union") and Equifax Information Services, LLC ("Equifax"). Each CRA is its own separate entity, and each receives consumer credit data through various sources and at potentially different times.

6. Experian acts as a storehouse of credit information, much like a library that houses books authored by independent sources, by ingesting, assembling, and reporting data as permitted by the FCRA. Furnishers of information (*e.g.*, creditors and lenders, also called "data furnishers") report credit, loan or other account information to Experian, such as an account number, account status, and balance information. Experian has its own set of policies and procedures for complying with its statutory requirements, and many of Experian's policies and procedures for processing consumer information provided by the furnishers are proprietary and confidential to Experian. Further, not all data furnishers report to Experian.

7. Experian only ingests and reports consumer credit information provided to it by its contracted and vetted data furnishers. The credit information associated with one account is also referred to as a "tradeline." A tradeline describes the consumer's account status and activity and generally includes the name of the

creditor with whom the consumer has an account, the date the account was opened, the credit limit or original account balance, the type of account, the balance owed, and the payment history. The information reported to Experian contains certain consumer identifying information such as full name, address, date of birth and Social Security Number, which is utilized to match credit information to the appropriate consumer. Experian assembles and stores all of this information and, in response to requests from its vetted and contracted subscribers who certify a permissible purpose, or from the consumer who is the subject of the information, Experian will provide the requested credit information.

8. A "consumer report" or "credit report" is a report of credit information furnished by a CRA to a credit grantor, insurer, or employer for the purpose of evaluating a consumer's eligibility for credit to be used primarily for personal, family or household purposes, or for employment purposes. When a consumer seeks access to their own credit information directly from a CRA, by contrast, the resulting document is called a "consumer disclosure" or "credit file disclosure." A consumer disclosure is designed to enable a consumer to review the information contained in their credit file and who is providing that information. A consumer may make a request for a consumer disclosure under section 1681g of the FCRA. Experian will also often provide a consumer disclosure in connection with delivery of the results of a consumer's request for reinvestigation.

9. Experian does not originate or create any credit information, and Experian does not make loans or decide who should receive credit. All of those functions are handled entirely by the credit granting industry, over which Experian has no control.

**Experian's Procedures**

10. Experian has expended and continues to expend significant time and resources in the research and development of reasonable procedures to ensure

maximum possible accuracy in all aspects of its consumer credit reporting business. Experian has implemented procedures to govern its entire process of handling consumer credit, including the receipt of credit information from data furnishers and the compilation of both reports and consumer disclosures. Experian has a commitment to this degree of reasonable procedures to ensure maximum possible accuracy not simply because it is required by law, but because Experian believes that the implementation of reasonable procedures to ensure accuracy must be the foundation of its business practices.

11. Specifically, Experian has implemented written policies and procedures that govern its handling of consumer credit information, including the receipt of credit information from data furnishers, the processing and storage of that information, and the compilation of consumer reports and consumer disclosures. These written procedures are maintained in procedures manuals that are subject to version control and are periodically reviewed and updated. Experian employees who handle consumer credit information receive training on the procedures applicable to their roles, including annual training on the FCRA.

12. Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information. These procedures include working with consumers to prevent errors in their credit reports, working with data furnishers regarding the completeness and accuracy of the data they supply, subjecting incoming data to automated systems and checks designed to identify and prevent errors, and periodically reviewing and refining Experian's computer systems.

13. In addition to the procedures described above, Experian follows procedures governing the acceptance of information reported to Experian by its data furnishers. In order to report credit information to Experian, a furnisher must pass through a rigorous credentialing and due diligence process and execute appropriate contracts. Experian only accepts consumer credit information from sources that it

considers to be reliable reporters of such information. Experian further requires its subscriber base to certify that they will only request credit information for a permissible purpose identified in section 1681b of the FCRA.

14. Even after a determination is made that a furnisher can be considered a reliable source of credit information, Experian subjects incoming data from the furnisher to the quality-control procedures described above. Experian will reject information that is illogical or fails to conform to industry standards. Experian re-credentials its furnishers on an annual basis. Experian also conducts periodic quality checks of the data provided by each furnisher.

**Experian's Inquiry-Matching and Fraud Shield Procedures**

15. Experian's subscriber base that have been vetted and credentialed by Experian and that certify a permissible purpose, may submit requests for credit information (credit inquiries) to Experian. Today, these are secured electronic transmissions. An inquiry contains the identifying information submitted by the subscriber for the consumer on whom they are seeking information. This includes the consumer's name, address, Social Security Number ("SSN") if available, and date of birth also if available. When Experian receives an inquiry, it compares the identifying information submitted with the inquiry, including the SSN, against the information maintained in its database in order to locate the consumer file, if any, that matches the identifying information submitted.

16. Experian does not generate, alter, or correct the identifying information that a subscriber submits with an inquiry, and it does not substitute a different SSN for the SSN that the subscriber transmits. Experian processes the inquiry using the identifying information as the subscriber submitted it. The subscriber is in the best position to know and verify the identifying information for the consumer with whom they are conducting business.

17. In the course of its business, Experian receives death records compiled by the Social Security Administration ("SSA") in the form of a feed known as the Limited Access Death Master File (the "Death Master File"), which is transmitted to Experian through the National Technical Information Service ("NTIS"), an agency of the U.S. Department of Commerce.

18. The Death Master File includes, if available, the deceased individual's SSN, first name, middle name, surname, date of birth, and date of death. Experian uses Death Master File data for fraud-prevention purposes, including the Fraud Shield procedures described below.

19. In addition to consumer reports and credit scores, Experian offers its subscribers a fraud-prevention product suite known as Fraud Shield℠, which provides information to assist subscribers in detecting possible identity theft. A subscriber that elects to receive Fraud Shield℠ information receives indicators that result from a comparison of the identifying information the subscriber submits with information already present in Experian's database or other source such as here, the Death Master File.

20. When a subscriber that has elected to receive Fraud Shield information submits an inquiry, Experian compares the SSN submitted with the inquiry against Death Master File data. Where the submitted SSN matches a Death Master File record, Experian returns a response indicating that fact, as the notice that is returned in this instances reads as follows: "Input SSN Recorded as Deceased." Experian makes that comparison/determination using the SSN exactly as the subscriber submitted it.

21. Attached hereto as **<u>Exhibit A</u>** is a true and correct redacted copy of the page of Experian's procedures manual addressing the "SSN Recorded as Deceased" report-screen message, labeled as EXP_BRETZ_000247. (EXP_BRETZ_000247.) As that page reflects, the message that appears on the report screen is "Input SSN

Recorded as Deceased," which means that "[t]he Social Security Number that was provided, is recorded as deceased." The SSA provides that information to Experian through the Death Master File.

22. A deceased-SSN response describes the identifier that was submitted with the inquiry. It is not a statement by Experian that the consumer named on the inquiry has died, and it does not place a deceased indicator in that consumer's Experian credit file. Fraud Shield indicators are intended to alert subscribers to potential identity fraud and to prompt the subscriber to request additional information from the applicant. The contracts and literature associated with Fraud Shield℠ and its use strictly prohibit a user from taking adverse action against a consumer based solely on the Fraud Shield℠ output.

23. In the Fraud Shield code field of an Experian response, code 5 signifies that the SSN submitted with the inquiry is reported as deceased, and code 25 signifies that the best-matched SSN at Experian is reported as deceased.

**Events Related to This Case**

24. I have reviewed Plaintiff's Experian file and Experian's records of her contacts with Experian, including the records described below, as well as Plaintiff's First Amended Complaint (ECF No. 29).

25. Experian maintains, in the regular course of its business, electronic records of the credit inquiries it receives. Attached hereto as **Exhibit B** is a true and correct redacted copy of an Experian Administrative Report reflecting the June 3, 2025 Charter inquiry, labeled as EXP_BRETZ_000454-EXP_BRETZ_000455. (EXP_BRETZ_000454–EXP_BRETZ_000455.)

26. The Administrative Report was generated from information maintained in Experian's systems and reflects the information contained in those systems as of the date the report was generated. The excerpts attached as Exhibit B contain the portions of the Administrative Report relevant to the June 3, 2025 Charter inquiries.

27. Attached hereto as **Exhibit C** is a true and correct redacted copy of an Experian Administrative Report reflecting information from Plaintiff's consumer file, generated on September 30, 2025, including the record of inquiries associated with Plaintiff's file. The information reflected in the Administrative Report is maintained in Experian's systems in the ordinary course of business, including the pages attached as EXP_BRETZ_000430, EXP_BRETZ000431, EXP_BRETZ_000455, and EXP_BRETZ_000489.

28. I have reviewed Experian's records of the credit inquiries it received on June 3, 2025. Those records reflect that on June 3, 2025, Experian received two inquiries from Charter Communications, Inc. d/b/a Spectrum ("Charter") in the name of Alexandrea Bretz. Both inquiries were transmitted to Experian electronically by Charter, both listed the same address, and both requested Fraud Shield information. *See* Ex. B at EXP_BRETZ_000455.

29. The first June 3, 2025 inquiry contained an SSN that differed from Plaintiff's SSN by one digit. Charter supplied that SSN to Experian as part of the inquiry; Experian did not generate, alter, or substitute the incorrect SSN.

30. The second June 3, 2025 inquiry, submitted by Charter the same day, contained Plaintiff's correct SSN. In response to that inquiry, Experian returned Plaintiff's Experian file, which did not identify Plaintiff as deceased and did not contain a deceased indicator. *See* Exs. B–C.

31. Experian's records reflect that the June 3, 2025 Charter inquiries were soft inquiries. Soft inquiries do not affect a consumer's credit score.

32. Based on my review of Experian's records, neither June 3, 2025 response identified Plaintiff as deceased, and Plaintiff's Experian consumer file did not contain a deceased indicator at that time.

33. I have also reviewed the documents Charter produced in response to Experian's subpoena, labeled CHRTR000001–CHRTR000009, which are attached

as **Exhibit B** to the Declaration of Nicole N. King ("King Decl."). *See* King Decl. ¶ 4.

**Plaintiff's Alleged June 24, 2025 Disclosure Request**

34. Experian maintains, in the regular course of its business, a disclosure log for each consumer file that records the requests for consumer disclosures that Experian receives and the disclosures that Experian provides. Attached hereto as **Exhibit D** is a true and correct redacted copy of Plaintiff's Experian Disclosure Log, labeled as EXP_BRETZ_000417–EXP_BRETZ_000429. (Experian Disclosure Log, EXP_BRETZ_000417-EXP_BRETZ_000429.)

35. I have reviewed Plaintiff's Disclosure Log and the other Experian records in which a request for a consumer disclosure would be recorded. Experian has no record of receiving a request for a consumer disclosure from Plaintiff on or about June 24, 2025, whether through annualcreditreport.com or otherwise.

36. Consumers may request a free annual file disclosure from Experian through the centralized source maintained jointly by the nationwide consumer reporting agencies, which is accessible at annualcreditreport.com. When Experian receives a request for a consumer disclosure, the request is recorded in the consumer's Disclosure Log. A message stating that "a condition that prevents Experian from being able to accept your request at this time" indicates that the request was not accepted, and a request that is not accepted is not recorded in the Disclosure Log as a request for a consumer disclosure.

37. On September 30, 2025, Experian provided Plaintiff with a consumer disclosure (Report No. 2441-7515-62). That disclosure did not identify Plaintiff as deceased and did not contain a deceased indicator. Attached hereto as **Exhibit E** is a true and correct redacted copy of that disclosure, labeled as EXP_BRETZ_000009–EXP_BRETZ_000028.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws

of the United States of America that the foregoing is true and correct. Executed on November 18, 2026, in Richland, Washington

Teresa Fievez