# TAB 12

ALEXANDREA DIANE BRETZ
7111 Santa Monica Blvd., Ste. B #1077
West Hollywood, CA 90046
Telephone: (562) 754-2937
Email: lexilucks@icloud.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDREA DIANE BRETZ,<br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br>Defendant. | Case No. 2:25-cv-01865-SPG-ASx<br>**DECLARATION OF ALEXANDREA DIANE BRETZ IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF RELIEF UNDER FED. R. CIV. P. 56(d)**<br>Hearing: Dec. 16, 2026, 1:30 p.m., Ctrm. 5C<br>Hon. Sherilyn Peace Garnett |

I, Alexandrea Diane Bretz, declare:

1. I am the Plaintiff in this action. I have personal knowledge of the facts in this declaration, and if called as a witness I could and would testify to them.

2. I have represented myself in this action since my former counsel was permitted to withdraw on December 11, 2025.

3. In or around May 2025, I applied for Spectrum Mobile service and Spectrum's phone balance buyout program, and I gave Spectrum my correct Social Security number. A Spectrum representative told me my application was denied because I was "dead," and told

me the information came from Experian. I escalated the denial with Spectrum, which opened Ticket No. 89599911, and Spectrum later approved my application; it approved my buyout reimbursement on June 11, 2025. I have never received from Experian or Charter a copy of the information Experian sent to Charter in response to either June 3, 2025 inquiry.

4. On or about March 13, 2026, I wrote to Charter about Ticket No. 89599911 and sent the letter by certified mail on March 16, 2026. On May 7, 2026, Charter's Legal Department responded in writing that, for the phone balance buyout program, "a credit check is required at the time of order entry," and that "[t]he denial of your PBB application was based on the information available at the time the credit check was performed." Exhibit 16 is a true and correct copy of that letter, which I produced to Experian on October 9, 2026 as BRETZ-SUPP-0001, with one sentence that does not concern the denial redacted.

5. On June 24, 2025, I went to www.annualcreditreport.com to request my free annual credit reports from TransUnion, Equifax, and Experian in one session.

6. In that session I obtained my TransUnion credit report and saved it as a PDF the same day. Exhibit 2 is a true and correct copy of its first page(s), with my personal identifiers redacted under Fed. R. Civ. P. 5.2. The saved file's embedded creation time is June 24, 2025, 21:49:06 UTC.

7. In the same session I obtained my Equifax credit report and saved it the same day. Exhibit 3 is a true and correct copy of its first page(s), redacted under Rule 5.2. It is dated June 24, 2025 and bears a reference containing "EFX-ACR" and "06242025." The saved file's embedded creation time is June 24, 2025, 21:52:47 UTC.

8. In the same session, when I requested my Experian report, the site displayed an Experian page that read: "We're sorry. A condition exists that prevents Experian from being able to accept your request at this time." I captured that page on my computer the same day. Exhibit 1 is a true and correct copy of my screen capture, unaltered. It is the same image listed as Joint Trial Exhibit 6.

9. The Experian page did not say that my identity could not be verified, and it did not say what the "condition" was.

10. Exhibit 4 is a true and correct copy of excerpts of Experian's Responses and Objections to Plaintiff's Interrogatories, Nos. 3, 4, 5, and 7, which Experian served on me on May 12, 2026.

11. Exhibits 5 and 6 are true and correct copies of pages Experian produced to me in discovery bearing Bates numbers EXP_Bretz_000237, 000241, 000246, 000257–000258, 000295, and 000391 (Exhibit 5, excerpts of Experian's procedures manual) and EXP_Bretz_000415–000416 (Exhibit 6, Experian's Dispute/Response Log). Experian designated them CONFIDENTIAL under the Stipulated Protective Order (ECF No. 62), and they are submitted for filing under seal subject to the Court's ruling on an application under Local Rule 79-5.2.2. At my direction, Social Security numbers (except the last four digits) and the month and day of my birth were redacted from these exhibits; the redactions do not change any other text.

12. Exhibit 8 is a true and correct copy of an Experian Fraud Shield product sheet bearing the notice "© 2012 Experian Information Solutions, Inc." and form number 6301-CS, which was downloaded at my direction on November 11, 2026 from the Internet Archive's Wayback Machine capture dated November 11, 2024 of https://creditplus.com/wp-content/uploads/2019/03/6301-experian-FraudShield-revision_FINAL-2. The original web address no longer returns the document. It lists Fraud Shield indicators 13 ("High probability Social Security number belongs to another") and 27 ("Social Security number reported more frequently for another") with Experian's descriptions of each.

13. On May 7, 2025 and June 11, 2025, I called Experian. I told Experian that I am alive and asked Experian to make sure it was not reporting me as deceased.

14. **Facts I cannot present without further discovery (Rule 56(d)).** I do not have, and cannot obtain without discovery, (a) the Social Security number and other identifiers Charter transmitted to Experian on October 24, 2024 and June 3, 2025; (b) the complete responses Experian returned to Charter on those dates, including every Fraud Shield code and any deceased-SSN message; and (c) Experian's definitions of Fraud Shield codes 13 and 27.

15. These facts exist. Experian's records show Charter inquiries on October 24, 2024 and June

3, 2025 (Fievez Decl. Ex. B at EXP_Bretz_000454; Ex. E at EXP_Bretz_000023). Charter's counsel states that the daily inquiry report is one "which Experian hosts on its side" and that Charter will comply with a court order (King Decl. Ex. A). The inquiry SSN and the SSN Experian returned are redacted from King Decl. Ex. B at CHRTR000002–000003.

16. These facts are essential. Experian's motion rests on the premise that Charter supplied a wrong SSN and that Experian returned nothing inaccurate. Whether the Session 1 SSN matches the one-digit SSN variant Experian itself carried on a record tied to me until September 2023 (Ex. 6), and what codes 13 and 27 told Charter, go directly to accuracy, reasonableness, and willfulness. I would also seek a Charter records custodian's authentication of CHRTR000001–000009.

17. On May 12, 2026, Experian responded to my Request for Production No. 11 that it "has served a subpoena on Charter Communications and will provide the response to Plaintiff," and responded to Request Nos. 1, 6, 7, and 8 by stating it was producing Automated Consumer Dispute Verification forms ("ACDVs"), the Transaction Log, the Disclosure Log, and the "confidential Disputes: Trades Participant Guide." Exhibit 7 is a true and correct copy of those responses (Request Nos. 1, 6, 7, 8, and 11). Fact discovery had closed on May 6, 2026. I relied on those representations.

18. I first received CHRTR000001–000009 from Experian's counsel by email on October 12, 2026, and Charter's May 21, 2026 letter on October 29, 2026. Exhibit 9 contains true and correct copies of the non-settlement portions of those transmittal emails. I did not have Charter's production from any source before October 12, 2026. Experian's counsel wrote in the October 12 email that I "should also have received these from [my] prior counsel." My prior counsel withdrew by court order on December 11, 2025 (ECF No. 44), more than five months before Charter's May 21, 2026 production, and no attorney has appeared for me in this case since then.

19. After receiving the production, I raised its gaps with Experian's counsel in writing, conferred under Local Rule 7-3, and submitted for filing a motion for leave to serve a

narrow subpoena on Charter, set for hearing on December 9, 2026 (submitted through the Court's Electronic Document Submission System on November 6, 2026, and resubmitted on November 10, 2026). If permitted, I would serve a subpoena limited to October 1, 2024 through June 30, 2025 and to the identifiers associated with me, and would take a short deposition of Charter's records custodian.

20. I signed a letter to Experian dated August 19, 2024, addressed to P.O. Box 2002, Allen, Texas 75013, requesting my full file disclosure and specifically "a copy of the credit report issued to Capital One in my name on or around July 3, 2024." Exhibit 10 is a true and correct copy of that letter and its envelope as Experian produced them in discovery (EXP_Bretz_000001–000004), with personal identifying information redacted. Experian's copy of the envelope bears a USPS Certified Mail label numbered 7021 2720 0002 1656 2227, an August 2024 postmark, and Experian's stamp "08/27/2024."

21. I wrote a letter to Experian dated September 15, 2023, disputing how it was reporting my status, including that I believed Experian was "incorrectly reporting me as deceased." I signed the letter and mailed it to Experian by certified mail in September 2023. Exhibit 11 is a true and correct copy of the first page of that letter and its envelope as Experian produced them in discovery (EXP_Bretz_000006–000007), with personal identifying information redacted. Experian's copy of the envelope bears a USPS Certified Mail label numbered 7022 3330 0002 0847 6287 and a Long Beach postage mark dated September 18, 2023.

22. Exhibits 12 and 13 are true and correct copies of pages Experian produced to me in discovery bearing Bates numbers EXP_Bretz_000169–000170 (Exhibit 12) and EXP_Bretz_000127 (Exhibit 13). Exhibit 14 is a true and correct copy of pages Experian produced to me bearing Bates numbers EXP_Bretz_000431, 000436–000437, 000439, 000442, 000444–000446, 000449–000452, 000456–000457, and 000464. Experian designated the Exhibit 14 pages CONFIDENTIAL under the Stipulated Protective Order (ECF No. 62), and they are submitted for filing under seal subject to the Court's ruling on an application under Local Rule 79-5.2.2. The pages in Exhibits 10 through 13 bear no

confidentiality designation. At my direction, Social Security numbers (except the last four digits), the month and day of my birth, and other personal identifying information were redacted from Exhibits 10 through 14; the redactions do not change any other text.

23. I did not receive from Experian, by mail or by email, any consumer disclosure on or about September 30, 2025, including any report numbered 2441-7515-62.

23A. On August 4, August 6, and September 15, 2026, I called Spectrum about upgrading my mobile device. On August 4, a representative told me, "I'm getting an error message. Right now, saying that I can't process it." (Ex. 17, BRETZ-SUPP-0004–0006.) On August 6, a representative said, "It's just telling me to enter a valid birthday and social security number each time." (Ex. 18, BRETZ-SUPP-0007–0009.) On September 15, a representative told me, "it doesn't match your date of birth." (Ex. 19, BRETZ-SUPP-0022–0096.) I recorded them. I served the August recordings, BRETZ-SUPP-0002 and -0003, on Mignuolo and King on October 9, 2026. I am producing the September 15 transcript in my November 17, 2026 Rule 26(e) supplement. Its audio, BRETZ-SUPP-0021, is available to lodge with the Court. I still cannot complete Spectrum's identity verification and do not know what information Spectrum received when it tried to verify me.

24. Additional facts I cannot present without further discovery (Rule 56(d)). I served my first requests for production and interrogatories on April 27, 2026. Experian served its responses on May 12, 2026, six days after fact discovery closed on May 6, 2026, and produced its file records, logs, and procedures manual (EXP_Bretz_000001–000492) after fact discovery closed. I received that production on or about May 12, 2026. The pages Experian designated confidential are stamped "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER," and the Protective Order was not entered until May 12, 2026 (ECF No. 62). Before that production I did not know that the systems described below existed. In addition to the facts in paragraph 14, I do not have, and cannot obtain without discovery: (d) the history of the "Statement and Notices" section of Experian's report screen for my file, including any Fraud Shield or "Input SSN Recorded as Deceased" message and the dates each was added or removed. I requested versions and snapshots of my file (Request for

Production No. 1) and records of any matching of my SSN to death records (No. 3). Experian pointed to its file and log production, which does not include this history. (e) The contents of my Experian file as they existed on June 3, 2025. I requested versions and snapshots of my file (No. 1) and documents about the Spectrum inquiry (No. 4). Experian produced an Administrative Report generated September 30, 2025. (f) Experian's internal "7X" report for my file and the meaning of the exclusion codes on it. I requested my file records (No. 1) and Experian's procedures (No. 8). I first learned that a 7X report exists from the manual Experian produced on May 12, 2026. (g) The agent notes, agent names, and case records for the contacts Experian logged as disputes from August 27, 2024 through September 4, 2024, on May 7, 2025, and on June 11, 2025, and any recordings of them, as well as the ACDVs and the "Disputes: Trades Participant Guide" that Experian stated on May 12, 2026 it was producing in response to Request Nos. 1, 6, and 8 (Ex. 7) but omitted from EXP_Bretz_000001–000492 (which contains zero ACDVs for my 2023–2025 disputes, zero pages of the Trades Participant Guide, and a Disclosure Log leaving agentName blank despite Experian's Rule 33(d) response to Interrogatory No. 3, Ex. 4). I first learned that Experian uses a call-recording system from the May 12, 2026 production. (h) Any record that Experian mailed or otherwise delivered Report No. 2441-7515-62 to me. I did not request delivery records before the cutoff because Experian first asserted that it "provided" this report in the declaration it served on November 3, 2026. Charter's records of its 2025 and 2026 identity-screening results for me, sought in my pending motion for leave to serve a Charter subpoena (ECF No. 110), are essential to determine what Charter received in 2025, including Experian's response, and what happened during the 2026 verification attempts.

24A. On November 18, 2026, I asked Experian's counsel in writing to confirm whether Experian's records reflect any inquiry by Charter Communications or Spectrum, or any response Experian returned to Charter (including Fraud Shield or identity-verification results), between August 1 and September 30, 2026, and to supplement Experian's responses to Interrogatory Nos. 4 and 5 under Rule 26(e). Experian's counsel responded the

same day that Experian's position is that "the time for discovery has passed." Exhibit 20 is a true and correct copy of that exchange. Whether Experian furnished information to Charter in connection with my August and September 2026 verification attempts is known to Experian and Charter, not to me, and I cannot obtain it without the Charter subpoena I have requested (ECF No. 110) or further discovery.

25. Basis for believing these records exist. Experian's own records show that some exist: its Disclosure Log records the contacts listed in (g) (Fievez Decl. Ex. D at EXP_Bretz_000418–000422), its File One report shows all four May 7, 2025 and both June 11, 2025 contacts logged under subscriber 3499953 30 CNX on zero-tradeline 2023 record N=0000020333 with no TII entries and 1499950 30 CAU on N=0000024907 (Ex. 14 at EXP_Bretz_000445, 000457) as well as June 24, 2025 activity on N=0000030484 (id. at EXP_Bretz_000451–000452, 000464) and "SP=CHRISTOPHER" / "SSNRPTDCNT=37" (id. at EXP_Bretz_000431), and its report for my file shows exclusion codes (Ex. 14). For the others, Experian's manual describes the systems that create them: Fraud Shield messages "will appear next to the FileOne PIN as well as in the Statement and Notices section," are listed with a "Date Added," and can be removed with a "FraudShield Deletion Request" form (Ex. 5 at EXP_Bretz_000237, 000246, 000241); excluded items "appear on the internal 7X report" (id. at 000257); and calls are recorded in "Calabrio" (id. at 000295). I do not know whether Experian kept these entries for my file; Experian has not said. As to (e), Experian's declarant states that its Administrative Report reflects my file as of September 30, 2025, not June 3, 2025 (Fievez Decl. ¶ 26). As to (h), Experian's declarant says the report was "provided," and the same log entry shows "No LETTERS" (Fievez Decl. Ex. D at EXP_Bretz_000417).

26. These facts are essential. They would show whether Experian's system recorded a deceased-SSN or other Fraud Shield message on my file and when, what my file contained when Charter inquired, what I told Experian in the logged contacts and whether Experian investigated, and whether Experian actually delivered the September 30, 2025 report its declarant describes. Each bears on accuracy, the reasonableness of Experian's procedures,

my disclosure claims, and willfulness.

27. After Experian told me on May 12, 2026 that it would provide Charter's subpoena response, Experian's counsel of record changed several times, as reflected on the docket (ECF Nos. 64–66, 79–82, 84, 105, 107). I received Charter's production on October 12, 2026.

28. Exhibit 15 is a true and correct copy of an email I received on November 6, 2026 from Nicole N. King of Venable LLP, counsel for Experian, responding to my November 5, 2026 meet-and-confer email.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 18 _, 2026, at West Hollywood _, California.

______________________________

Alexandrea Diane Bretz, Plaintiff, Pro Se